Argued February 9, reversed April 18, rehearing denied July 29, 1922.

# IWANICKI v. STATE INDUSTRIAL ACCIDENT COMMISSION.

(205 Pac. 990.)

**Master and Servant—Industrial Accident Commission's Letter Reciting Proceedings in Compensation Case Held not Appealable "Decision."**

1. Where, after an award by the Industrial Accident Commission, the claimant's attorney wrote the commission and submitted affidavits in support of the claim of further disability, and in response to the last of his communications the commission wrote him reciting the previous correspondence, and stating that the claim was closed, this was merely a narrative of past occurrences, and not an appealable decision under Section 6637, Or. L., as amended by Laws of 1921, Chapter 311.

**Master and Servant—Increase of Compensation Requires Application Showing Change of Circumstances.**

2. Section 6632, subdivisions C and E, Or. L., making the jurisdiction of the Industrial Accident Commission continuing, and authorizing it to modify and change its former findings or orders, does not contemplate that a case shall be reopened and a new trial granted on the old application, and the claimant, to obtain an increase or rearrangement of compensation, must make application and show some change of circumstance warranting the desired increase.

**Master and Servant—Modification of Orders in Compensation Case Appealable.**

3. Under Sections 6632, 6637, Or. L., a modification or change by the Industrial Accident Commission of its former findings or orders is not purely discretionary and beyond the right of appeal.

**Master and Servant—Commission's "Jurisdiction" to Decide Fixed When Right of Appeal is Lost by Lapse of Time.**

4. Under Section 6632, subdivision E, Or. L., providing that the "jurisdiction" of the Industrial Accident Commission shall be continuing, and that it may modify and change former findings or orders, "jurisdiction" implies the right to decide finally, and, when the right of appeal is lost by lapse of time, the decision is fixed, and not appealable.

**Master and Servant — Occupational Disease not Compensable as "Accident."**

5. Under Sections 6616, 6626, Or. L., providing compensation for a personal injury by accident caused by violent or external means,

5. Incapacity resulting from industrial or occupational disease within meaning of Workmen's Compensation Acts, see notes in L. R. A. 1916A, 106; L. R. A. 1917D, 113; L. R. A. 1918F, 872; Ann. Cas. 1916D, 694.

Disease as an accident within meaning of Workmen's Compensation Acts, see notes in 2 Ann. Cas. 140; 15 Ann. Cas. 886; Ann. Cas. 1913A, 1121; Ann. Cas. 1918B, 309, 345, 354.

codified from Laws of 1913, Chapter 112, entitled "An act creating the State Industrial Accident Commission and providing an Industrial Accident Fund," the element of suddenness or precipitancy is essential to an accident, and an occupational disease such as lead poisoning, caused by the practice of putting tacks in the mouth during a period of seven weeks, is not an accident, especially in view of Sections 6632 and 6634, relative to reports of accidents and claims for compensation.

**Master and Servant—Objection to Compensation for Occupational Disease Available at Any Time.**

6. Under Section 72, Or. L., the objection apparent on the face of the record in a workmen's compensation proceeding that the claimant did not sustain an accident, but contracted an occupational disease, may be raised for the first time in the Supreme Court.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

For respondent there was a brief over the names of *Mr. B. A. Green* and *Messrs. McGuirk & Schneider,* with oral arguments by *Mr. Green* and *Mr. Walter T. McGuirk.*

BURNETT, C. J.—On December 21, 1920, the plaintiff filed with the Industrial Accident Commission a workman's claim for compensation by which it appears that he was in the employ of the Pacific Car & Foundry Company, engaged in building cars, and that he was occupied in upholstering for seven weeks. He states that the accident happened while he was working in the erecting shop; that he put nails in his mouth; and that on account thereof a severe case of lead poisoning ensued, resulting in

obstruction of the bowels. The commission at first disallowed his claim entirely, but afterwards reconsidered its decision, made an adjustment of · the claim which required correction in some detail of calculation, and finally on March 18, 1921, made an allowance setting out the total to which he was entitled, deducting payments already made and stating that the complainant "is entitled to receive the further payment of $25.16 in full settlement for any and all claims arising out of such injury as above listed on the records of the State Industrial Accident Commission." The plaintiff's attorney on April 2d addressed a letter to the commission advising it that the claimant was then suffering from lead poisoning neuritis and was unable to work. He closed his letter with this language:

"I do not want to file an additional notice of appeal and I believe the matter can be adjusted amicably if we are permitted to appear before your commission sometime in the near future."

On April 6, 1921, the commission wrote the attorney acknowledging receipt of his letter of April 2d and saying:

"As there has been no evidence submitted which would justify the commission in reopening these cases we will be unable to comply with · your re-·quest."

Afterwards, on April 20th, the attorney filed an affidavit of the claimant reciting the history of the proceedings, admitting compensation on account of his disability up to and ·including January 31, 1921, also quoting the letter written by the attorney, already mentioned, and asserting that the claimant is still suffering from the disability. With it also was submitted a certificate of his physician dated

April 16, 1921, to the effect that the petitioner had complained to him about a month previous of pains in his legs and shoulders, had some colic and occasionally a sort of mental lapse; that the physician had examined his blood; that his nutrition was good; and that almost all of his symptoms were subjective except that the plaintiff is a little ataxic and seems to be mentally irritated. Thereafter, on May 16, 1921, the commission, acknowledging receipt of the attorney's letter, stated:

"Final action was taken by the commission on these cases March 17th, which was covered by our findings dated March 18th. The claims will not be reopened."

On July 9, 1921, the commission received through the attorney the following affidavit:

"I, Ralph S. Fisher, being first duly sworn, do depose and say that I have been in attendance as physician and surgeon upon Julian Iwanicki since about the middle of the month of November, 1920. I found him to be suffering from acute lead poisoning and treatments were given accordingly during the months of November, December, January and February. These treatments were given at intervals varying from two to five days. During the first part of February, 1921, Julian Iwanicki seemed to be normal. Later on and about the first of March, he returned to me for treatments, still suffering from acute lead poisoning. Although his condition at this time was not as serious as formerly, he complained of pains in his legs and shoulders and considerable amount of colic, and occasinally a sort of mental lapse, whether from dizziness or not, I cannot say. Upon April 14 I had his blood examined and attach herewith the findings, which were negative. I also found the urine to be negative. He claimed to be unable to work. His nutrition was good and most all symptoms were subjective. At all times subse-

quent to about the first of March, he has reported to me and received treatments at intervals, as stated above, up until about the twentieth day of June, 1921. His condition has been steadily improving and to me he seems to be fully recovered and to be able to return to work, although this cannot be definitely determined, owing to the nature of the illness."

On July 11th, the commission wrote the attorney, acknowledging receipt of the letter accompanying that document, and stating that:

"We beg to advise you that the claims in question have been closed."

The plaintiff then appealed to the Circuit Court of Multnomah County on August 25, 1921. On September 28, 1921, the commission filed a motion to dismiss the appeal, as follows:

"Comes now the defendant in the above-entitled appeal and moves that said appeal be dismissed for the reason that the defendant has not since March 18, 1921, made any decision relative to the claim of Julian Iwanicki for compensation under chapter I of Title XXXVII of Oregon Laws, and that the time in which plaintiff is entitled to appeal has long since expired."

Appended is an affidavit giving the history of the proceeding, setting out substantially all of the correspondence on the subject. This had already appeared in the abstract, so that taken altogether there is reiteration of documents almost equal to that in the nursery literature of "The House That Jack Built."

The commission stood on its motion to dismiss, which was overruled by the Circuit Court, and refused to proceed further. The plaintiff called a

jury and presented his evidence. The jury returned the following special verdict:

"We, the jurors, duly impaneled in the above cause, make answer to the following questions as here below given:

"I.

"Was there an aggravation of plaintiff's injury subsequent to the award of temporary total disability? A. Yes.

"II.

"If so, was there a recurrence of the injury or aggravation discovered after the award of temporary total disability? A. Yes.

"III.

"Did plaintiff make application in this case for an award on account of the aggravation? A. Yes.

"IV.

"Does plaintiff now suffer permanent partial disability and loss of function of the left arm which condition was not present prior to the application in this case? A. Yes.

"V.

"If so, what per cent of permanent partial disability and loss of function of the left arm does plaintiff now suffer? A. 95 per cent.

"VI.

"Has plaintiff at any time, on account of the accident, suffered total disability since this application was made? A. No.

"VII.

"If so, for what period of time? A. ——.

"VIII.

"Is he now totally disabled? A. No.

"IX.

"Does plaintiff now suffer permanent total disability? A. No."

Upon this verdict the Circuit Court remanded the cause to the commission with orders forthwith to

fix compensation for the plaintiff in accordance with the findings of the jury and award him costs and disbursements. From this result the commission appealed, saying in its assignment of errors that:

"The court erred in denying defendant's motion to dismiss plaintiff's appeal.

"The judgment is not supported by the verdict.

"The court erred in entering a judgment upon a defective and uncertain verdict which does not sustain such judgment."

As to the motion to dismiss the appeal, the record discloses that besides the decision of March 18th, making an allowance, "in full settlement for any and all claims arising out of such injury," there were: (1) a letter of April 6th written by the commission to the effect that it would be unable to comply with the attorney's request to reopen the cases; (2) the letter of May 16, 1921, stating that "final action was taken by the commission on these cases March 17th, which was covered by our findings dated March 18th. The claims will not be reopened"; and lastly, (3) the letter of July 11th in which the commission writes, "We beg to advise you that the claims in question have been closed."

1. Section 6637, Or. L., as amended by the act of February 26, 1921, Laws of 1921, Chapter 311, provides that:

"The commission shall have full power and authority to hear and determine all questions within its jurisdiction, but any beneficiary not satisfied with the decision or findings of said commission, may, within sixty days after notice of the final action of such commission, appeal to the circuit court of the State of Oregon for the county in which such claimant resides."

If each of these letters of the commission which have been noted was a decision, it became final beyond the right of appeal at the expiration of sixty days from the date of the letter. This would dispose of all of them except the one of July 11, 1921, which is described in the notice of appeal as being the decision from which the appeal was taken.

*Enneberg* v. *State Industrial Acc. Com.,* 88 Or. 436 (167 Pac. 310, 171 Pac. 765), was a case involving a claim which had been determined by the Industrial Accident Commission. There, as here, the claimant seems to have been dissatisfied with the result and in response to the letter to the commission by his attorney under date October 5, 1916, as in this instance that body addressed a communication to the attorney on October 11th, following, saying that the claimant "was settled with in full and final voucher received. Under the law his right of appeal has expired and we feel that no injustice can be done by refusing further payment in this case." Final settlement voucher had been issued October 18, 1915, so that it was almost a year afterwards that the claimant wrote the letter alluded to. The notice of appeal was served on November 13, 1916. It was dated October 31st of that year, and appealed from the decision rendered on October 11, 1916. There, as in this instance, the Circuit Court refused to dismiss the appeal. Treating of this situation, Mr. Justice HARRIS, speaking for this court, said:

"In October, 1915, the commission decided to discontinue payments. The letter written by the commission to Enneberg on October 11, 1916, was not a decision; it merely gave the information that final settlement had been made with Enneberg in 1915 and that the right of appeal had expired. The last decision rendered by the commission was made in

104 Or.—42

1915. The letter of October 11, 1916, merely related what had occurred a year before.''

Measured by this standard, the letter of July 11, 1921, which the notice of appeal in the instant case characterized as a decision, is merely a narrative of past occurrences and does not constitute a decision within the meaning of the statute.

2, 3. It is true that under subdivision E of Section 6632, Or. L., ''the power and jurisdiction of the commission shall be continuing and it may from time to time make such modification and change with respect to former findings or orders with respect thereto, as in its opinion may be justified.''

4. Earlier in this same section it is provided that where a workman is entitled to compensation under this act, he shall file with the commission his application for such compensation on blanks furnished by the commission, and further, in subdivision C, that ''if change of circumstances warrants an increase or rearrangement of compensation, like application shall be made therefor.'' In order, therefore, for the claimant to obtain an increase or rearrangement of compensation he must make an application and show some change of circumstances which would warrant the desired increase.

It is not contemplated by the statute that a new trial shall be granted and the case reopened before the commission on the old application. Neither is it the rule that a modification or change with respect to former findings or orders is purely discretionary and beyond the right of appeal. The reason for this is found in Section 6637 already quoted. That gives the commission power to hear and determine all questions within its jurisdiction; but all alike are subject to appeal to the Circuit Court. No excep-

tion whatever is made of any determination within the power of the commission. Jurisdiction necessarily implies the right to decide finally a question properly presented, subject, of course, to the right of appeal. But when this right of appeal is lost by a lapse of time, the very essence of the term "jurisdiction" means that the decision by virtue of it has become fixed and not appealable.

Since the claimant has not appealed from the final allowance made March 18th or from the letters of April 6th and May 16th, whether they be decisions or narrations of past events, they must be laid out of the case; and finally on this point, the letter of July 11th, being merely narrative of past occurrences happening before the commission, was not a decision within the meaning of the Enneberg case. The Circuit Court was in error in not dismissing the appeal.

5. The decision might well end at this point, but the question was argued at great length before us, whether or not the claimant had shown an accident caused by violent or external means within the meaning of the statute, and for this reason we proceed to examine that feature of the case. The legislation on this subject originated in "an act creating the state industrial accident commission and providing an industrial accident fund," etc., embodied in Chapter 112 of the Laws of 1913 and approved on referendum November 17, 1913. It is said in Section 6616, Or. L., part of the codified form of the act mentioned, that "every workman subject to this act while employed by an employer subject to this act, * * who while so employed sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, * * shall be entitled to receive from the industrial accident fund * * the

sum or sums hereinafter specified." Again, in Section 6626, Or. L., it is provided that "if any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of or in the course of his employment, caused by violent or external means," he shall receive certain beneficial payments from the industrial accident fund. It is laid down in Section 6632, subdivision D, that "no application shall be valid or claim thereunder enforceable in nonfatal cases unless such claim is filed within three months after the date upon which the injury occurred." In Section 6634 as the law stood at the time of the occurrences set out in the record here, it was required of the employer that "whenever any accident occurs to any workman it shall be the duty of the employer to at once report such accident and the injury resulting therefrom to the commission."

What, then, is an accident caused by violent or external means? The word "accident" without reference to the accompanying words of our statute, "caused by violent or external means," has been variously defined. In a brochure on workmen's compensation acts, issued by the publishers of Corpus Juris in 1917, we find at page 64 thereof the following:

"'The word 'accident,' as used in a compensation act requiring the injury compensated for to be by 'accident,' is held to be employed in its ordinary sense as meaning an unlooked-for and untoward event which is not expected or designed; and the term 'accidental' means something unusual, unexpected, and undesigned. It would seem that an injury cannot be held to be an injury by accident unless

a specific time or occasion can be fixed on as the time when the alleged accident happened, but it is not essential that there be an application of violence or external force to the person of the workman.''

It is further said that:

''An idiopathic as distinguished from a traumatic disease cannot be regarded as an injury by accident; but on the other hand the fact that an injury may be classed as a disease does not take it out of the operation of a compensation act. Even under the restricted use of the term 'personal injury' as referring merely to accidental injuries it includes all of the consequences of the accident, whether a development of the injury from a derangement of the physical structures of the body, or of a disease from the accident. Hence a disease occasioned by an accident is held to be a personal injury and the accident is to be regarded as the proximate cause, as for example where an abrasion or breaking of the skin is followed by blood poisoning or by the entry of the germ of an infectious disease. It is not necessary that the lesion of the skin be produced by physical force. An idiopathic disease in the sense in which the term is used in the discussion of the cases arising in this connection is one which develops gradually or at least imperceptibly and, while it may be attributable to external conditions, is also dependent in part on conditions inherent in the individual. A traumatic disease, on the other hand, is one which is caused by physical injury. In order that a disease may be regarded as traumatic, it has been held that the employee must be able to specify the time when, and the place where, the alleged accident occurred. An occupational or industrial disease is a disease caused by or especially incident to, a particular employment. Such a disease has been held to be a personal injury within the meaning of such term when unqualified by the requirement that it shall be accidental or by accident, the injury being sustained when the employee becomes unable to work.

But the weight of authority, so far as the question has yet been passed on by the courts, is against this position; and further it seems fairly obvious that an occupational disease is not an injury by accident."

There are many and varied definitions of the term "accident" which apparently are irreconcilable when considered apart from the statute in which the term is employed. For instance, the Massachusetts statute awards compensation for "personal injury," and this without reference to whether or not it was accompanied by violence or external force, the only requirement being that it arise out of and be connected with the employment. On the other hand, it is well settled that where the injury is accidental and is to be accomplished by violence or external force, due effect must be given to these additional elements so that a distinction is to be drawn between mere injury and accident accomplished by force or violence.

In *United States Acc. Assn.* v. *Barry*, 131 U. S. 100 (33 L. Ed. 60, 9 Sup. Ct. Rep. 755, see, also, Rose's U. S. Notes), the court approved an instruction to the effect following:

"If the result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if in the act which precedes the injury something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

Throughout all the precedents treating of accident, especially an accident caused by violent or external means, runs the element of suddenness or precipitancy going to make up an accident. It does not allude to the insensible progress of a mere occupa-

tional disease. It does not mean that where a work is pursued in the ordinary manner and one contracts a disease which may reasonably be expected to occur to some people in the pursuit of such an occupation, the result shall be called accidental as distinguished from the mere personal injury contemplated by statutes like that of Massachusetts. Some authorities, however, go so far as to say that injury alone means a traumatism occuring by accident. For instance, in *Miller* v. *American Steel & Wire Co.,* 90 Conn. 349 (97 Atl. 345, L. R. A. 1916E, 510), the Connecticut act there involved uses the words "personal injury arising out of and in the course of his employment." The majority opinion held that even this statute excludes occupational disease and both the majority opinion and the one dissenting say that if the term "accident" had been used, occupational diseases would not have afforded grounds for compensation. That was a case treating especially of lead poisoning, and it was held not to be accidental.

The same conclusion was reached in *Industrial Acc. Com.* v. *Brown,* 92 Ohio, 309 (110 N. E. 744, L. R. A. 1916B, 1277), *Adams* v. *Acme Works,* 182 Mich. 157 (148 N. W. 485, Ann. Cas. 1916D, 689, L. R. A. 1916A, 283), and *Steel* v. *Cammell,* 2 K. B. 232 (2 Ann. Cas. 142). A similar English case is *Broderick* v. *London County Council,* 2 K. B. 807 (15 Ann. Cas. 885), where it was held that:

"A workman who contracts enteritis by inhaling sewer gas in the course of his employment does not sustain a 'personal injury by accident' within the meaning of the English Workmen's Compensation Act of 1906."

In the note to *Brintons* v. *Turvey,* 2 Ann. Cas. 137, at page 141, it is said:

"For disease to be held accidental it would seem that there must be an accidental cause which is considered to be distinct from the disease itself."

No one disputes that if an accident happens within the true meaning of the term, which brings on a subsequent disease, the ailment may be counted as part of the injury, but the initiative must be found in the suddenness and unexpectedness of what is termed "accident." It does not allude to the steady and imperceptible advance of disease in the human system. It would be competent, of course, for the legislature in the exercise of its police power and the usual care for those who toil to provide compensation for occupational diseases, but it has not done so and we cannot read into the statute compensation for ailments which do not come within the scope of an accident caused by violent or external means.

Including those precedents cited in the briefs, we have examined the following: *In re Hurle,* 217 Mass. 223 (104 N. E. 336, Ann. Cas. 1915C, 919, L. R. A. 1916A, 279); *Reithel's Case,* 222 Mass. 163 (109 N. E. 951, L. R. A. 1916A, 304). As already pointed out, the Massachusetts statute is for personal injury without reference to accident or other fortuitous occurrence, and the cases there are rightly decided, to the effect that gradually developing disease is an injury within the scope of the statute and subject to compensation: See also *Dozier* v. *Fidelity Co.,* 46 Fed. 446 (13 L. R. A. 114); *Lovelace* v. *Travelers Protective Assn.,* 126 Mo. 104 (28 S. W. 877, 47 Am. St. Rep. 638, 30 L. R. A. 20); *Crandal* v. *Accident Ins. Co.,* 27 Fed. 40; *Equitable Accident Co.* v. *Osborn,* 90 Ala. 201 (9 South. 869, 13 L. R. A. 267); *Paul* v. *Travelers Ins. Co.,* 112 N. Y. 472 (20 N. E. 347, 8 Am. St. Rep. 758, 3 L. R. A. 443); *Bur-*

*hard* v. *Travelers Ins. Co.,* 102 Pa. 262 (48 Am. Rep. 205); *Tennant* v. *Travelers Ins. Co.,* 31 Fed. 322; *Sullivan* v. *Modern Brotherhood,* 167 Mich. 524 (133 N. W. 486, Ann. Cas. 1913A, 1116, 42 L. R. A. (N. S.) 140); *Bacon* v. *United States Acc. Assn.,* 123 N. Y. 304 (25 N. E. 399, 20 Am. St. Rep. 748, 9 L. R. A. 617); *Western Travelers Acc. Assn.* v. *Holbrook,* 65 Neb. 469 (91 N. W. 276, 94 N. W. 816).

Throughout all these precedents we find it laid down that where the term "accident," especially when it is to be brought about by violent or external means, is employed, it denotes some sudden, unexpected happening which produces the hurtful result and must be referable to a certain time and place. The requirements of our Code that the claim shall be filed within a certain time after the date of the accident and that the employer must make immediate report of the happening of the accident, enforce this conclusion, that the injury must be referable to a certain point of time.

Again, we recur to the title of the act, which purports to give relief against accident and to establish an accident fund. Clearly, this does not refer to a lingering disease which comes on imperceptibly and runs its course, whether to a fatal or to a benign conclusion. The act manifestly applies only to sudden happenings induced by violence or some external force. In order to constitute a good claim, or, in other words, to state facts sufficient to constitute a cause of action, the claimant must make such averments of fact as will bring him within the statute. Merely to state that by his own indulgence of the practice of putting tacks in his mouth during a period of seven weeks' employment, he contracted lead poisoning, is faulty in averment in that it lacks any

allegation of accident or of the elements from which may be drawn the conclusion of accident. Especially is there wanting both in averment and proof any showing of violent or external means which are essential and fundamental ingredients of a claim under the statute.

6. But it is urged by the claimant that this question cannot be raised at this stage of the proceedings. However, it has been held by a long line of precedents in this state that the objection that the complaint does not state facts sufficient to constitute a cause of suit is never waived and may be urged for the first time in the appellate court, without assigning the same as ground of appeal: Section 72, Or. L.; *Bowen* v. *Emmerson,* 3 Or. 452; *King* v. *Boyd,* 4 Or. 326; *Evarts* v. *Steger,* 5 Or. 149; *Mack* v. *Salem,* 6 Or. 278; *McKay* v. *Freeman,* 6 Or. 449; *State* v. *McKinnon,* 8 Or. 487; *Weissman* v. *Russell,* 10 Or. 74; *Carver* v. *Jackson County,* 22 Or. 63 (29 Pac. 77); *Ball* v. *Doud,* 26 Or. 14 (37 Pac. 70); *Schmit* v. *Day,* 27 Or. 116 (39 Pac. 870); *Wyatt* v. *Henderson,* 31 Or. 48 (48 Pac. 790); *Willetts* v. *Walter,* 32 Or. 413 (52 Pac. 24); *Hargett* v. *Beardsley,* 33 Or. 304 (54 Pac. 203); *Moore* v. *Halliday,* 43 Or. 250 (72 Pac. 801, 99 Am. St. Rep. 724); *Adams* v. *Kelly,* 44 Or. 69 (74 Pac. 399); *Kalyton* v. *Kalyton,* 45 Or. 116 (74 Pac. 491, 78 Pac. 332); *David* v. *Moore,* 46 Or. 154 (79 Pac. 415); *Horn* v. *United States M. Co.,* 47 Or. 124 (81 Pac. 1009); *Keene* v. *Eldriedge,* 47 Or. 179 (82 Pac. 803); *Woolley* v. *Plaindealer Pub. Co.,* 47 Or. 626 (84 Pac. 473, 5 L. R. A. (N. S.) 498); *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135); *Parrish* v. *Parrish,* 52 Or. 161 (96 Pac. 1066); *Siverson* v. *Clanton,* 88 Or. 261 (170 Pac. 933, 171 Pac. 1051); *Service* v. *Sumpter Valley R. R. Co.,* 88 Or.

554 (171 Pac. 202); *Rosenberg Co.* v. *General Acc. Corp.*, 98 Or. 118 (193 Pac. 441).

The basic fact is without dispute that what happened was a disease contracted over a space of about seven weeks, in the ordinary conduct of the occupation in which the claimant was engaged. In other words, this is a case of occupational disease. From the precedents cited the analogy is plain that such an objection, apparent as it is on the face of the record, may be raised at any stage, even for the first time in this court.

The Circuit Court was in error in not dismissing the appeal. It likewise erred in entering judgment against the commission, on the showing made. Its decision is reversed.

REVERSED.   REHEARING DENIED.

McBRIDE, HARRIS and RAND, JJ., concur.