Submitted on briefs March 3, affirmed April 28, 1925.

## WILLIAM L. ROBERTSON *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

(235 Pac. 684.)

**Appeal and Error—Verdict may not be Set Aside, Unless Unsupported by Evidence.**

1. Under Constitution, Article VII, Section 3c, verdict may not be set aside, unless there is no evidence to support it.

**Master and Servant—Compensation Allowable for General Diseases Only Where Result of Accidental Injury.**

2. Under Workmen's Compensation Law, recovery for occupational or general diseases is allowable only where disease is traceable to accidental personal injury arising in course of employment.

**Master and Servant—Finding Pneumonia Resulted from Bruises on Leg Sustained.**

3. In proceeding under Workmen's Compensation Law to recover for loss of time and disability resulting from pneumonia, evidence

---

1. See 2 R. C. L. 193.
2. See 28 R. C. L. 794.
3. Necessity and sufficiency of evidence that pneumonia contracted by applicant for compensation is attributable to his employment, see note in 20 A. L. R. 66.

*held* to sustain finding that it resulted from bruises on leg caused in course of employment and resulting weakened condition.

**Appeal and Error—Every Legitimate Inference will be Drawn in Support of Verdict.**

4. In reviewing record to determine whether it is supported by evidence, every legitimate inference therefrom will be adduced in support of verdict.

**Master and Servant—Commission not Entitled to Appeal on Grounds Verdict is not Supported, in Absence of Motion for Directed Verdict.**

5. Compensation Commission, being restricted on appeal to theory of defense taken below, *held* not entitled to contend that there was not sufficient evidence to support verdict, where there was no motion to take case from jury on that ground.

**Appeal and Error—Denial of Motion for Nonsuit not Reviewable, in Absence of Specification of Grounds.**

6. Action of trial court in denying motion for nonsuit will not be reviewed, unless motion specifies the grounds therefor.

---

See (1) Appeal and Error, 4 C. J. 853. (2) Workmen's Compensation Acts, C. J. 68 (1926 Anno.).

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

This is a proceeding under the Workmen's Compensation Act.

On July 25, 1923, William L. Robertson, the claimant herein, was in the employ of Stockton Brothers, who were engaged in construction work on the Troutdale road in Multnomah County, Oregon. On that date he suffered an accidental personal injury to his leg, arising out of and in the course of his employment. This much is conceded by the appellant. Within the time provided by the act, the claimant filed with the State Industrial Accident Commission of Oregon a report of his injury, wherein he sought to recover for pneumonia, which he claimed resulted from the accidental injury to his leg. On October 2, 1923, the Commission entered

---

4. See 2 R. C. L. 219.
6. See 2 R. C. L. 42.

its findings and final action, refusing to make any award to the claimant. The claimant appealed to the Circuit Court of the State of Oregon for Multnomah County. On trial before a jury, testimony was adduced upon the part of the claimant, and, the defendant having offered no evidence, the jury returned into court, among other findings, the following: .

"In the matter of the Claim of William L. Robertson, Claimant-Plaintiff.

"1. Did the claimant, William L. Robertson, develop pneumonia as the proximate result of and by reason of the original injury involved herein, and does he now suffer total permanent disability which renders him incapable of performing any work at any gainful occupation by reason of the original injury received by him herein, and the pneumonia contracted and growing out of as a direct and proximate result of and from that original injury?

"A. Yes. * *

"2. Did William L. Robertson suffer an accidental injury by external means to his right leg while employed as a laborer and servant by Stockton Brothers, and did this injury arise out of and in the course of his employment?

"A. Yes. * *

"9. Was William L. Robertson confined in a hospital as the result of said injury so received and because of the pneumonia growing out of and as the direct and proximate result of said injury to his right leg involved herein?

"A. Yes. * *

"10. If your answer to the preceding question is 'yes,' then state what period of time said William L. Robertson was confined in the hospital?

"A. Eight weeks. * * "

In conformity with the verdict and answers to the questions propounded to the jury, the Circuit Court,

on February 12, 1924, entered judgment in favor of the claimant.

The Commission, appealing, asserts that there is manifest error in the record, in this: That the notice of appeal fails to state a cause of action; that the record fails to disclose that any claim for compensation was filed within the statutory period; that the record fails to disclose a causal connection between the alleged accident and the succeeding illness. In its brief, however, the Commission confines its discussion to the last assignment.

AFFIRMED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. James West,* Assistant Attorney General, and *Mr. Miles H. McKey,* Assistant Attorney General.

For respondent there was a brief over the name of *Messrs. McGuirk & Schneider.*

BROWN, J.—That the claimant suffered an accidental personal injury arising out of and in the course of his employment is not disputed. The only controversy is as to whether the pneumonia which followed was the result of the injury.

1. If the record discloses evidence fairly tending to show that the pneumonia resulted from the accidental personal injury received by claimant in the course of his employment by Stockton Brothers, the judgment of the Circuit Court must be affirmed. It is a declaration of our fundamental law that—

"No fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Art. VII, § 3–c, Or. Const.

This is a mandate coming from the people. It is expressed in clear and concise language, and requires no elucidation.

At the time of the accident, William L. Robertson, the claimant, had been an employee of Stockton Brothers, builders and contractors, of Gresham, Multnomah County, Oregon, for a number of years. On that date both employer and employee were subject to the provisions of the Workmen's Compensation Act and were contributors to its fund.

It is conceded by the Commission's brief that Robertson, while in the course of his employment, sustained an accidental personal injury to his right leg between the ankle and knee, and that he was entitled to compensation for a brief period of time.

At the time of the accident, Robertson was a strong man, in apparent robust health, weighing about 220 pounds. At the time of the hearing of this case in the court below, his weight was 140 pounds. On the occasion of the injury, he was wheeling a load of cement in a wheelbarrow, and, while pushing the heavily loaded wheelbarrow, it struck some object and suddenly stopped. Robertson testified:

"The wheelbarrow came up with a chug and stopped, and as I went to take a step I whacked it (his leg) right into the (iron) crosspiece on the wheelbarrow."

He further testified:

"It was a new wheelbarrow. It had not been used to wheeling and the handle was a little bit shorter and the bar was a little bit lower down on the legs, and I hit the crossbar there and knocked the skin off of my leg and it made me sick at my stomach. * * I had to stop for a few moments and sit down. I was sick. Then I went ahead and finished up that day. I felt bum all that day * *

and then the next day. * * That night I went home and I sat down to eat supper, and I couldn't eat no supper. I was so sick. And I went to bed and I had a chill, and my leg was—right here there was a big place blue and watery places came up on it, and the next morning it wasn't no better. * *

"Q. What doctor did you get?

"A. Dr. Hughs.

"Q. What did he do for you, so far as you know?

"A. Why, he had my wife to put on hot applications onto my leg and keep them on continually. * * He has attended to me ever since this up to the time I went to the hospital. * * I was in the hospital eight weeks."

Witness thus described the condition of his leg after the injury:

"It was tight along the bone, along here, and hard like as near as I can tell you, outside of the blisters and the blue. * * I was limping all the rest of the time until I went to bed until afterwards. It still pains.

"Q. What is your condition at this time, if you know?

"A. It ain't very good. When I was at the hospital I had an operation and they tapped me on the side and drew off a lot of pus out of my side and my side is still running * * .

"Q. What had been your condition as to health previous to the 25th of July, 1923, when you were injured?

"A. I was never sick a day in my life."

Dr. H. H. Hughs, claimant's attending physician, testified that he was called to see Mr. Robertson at his home; that—

"He was in bed. Mr. Robertson had, on his right leg, over his right shin bone, a lesion—an infected abrasion, I call it—showing an inflammation about three or four inches above and below this lesion, and

considerable pain and a fever. I put on wet boric acid pack and ordered him to stay in bed until he was better. * *

"Q. Was there any condition that developed after that infection there in the leg?

"A. There was pneumonia and a pleurisy development afterwards."

He then testified as an expert, whose qualifications the state admitted, that in his opinion pleurisy and pneumonia resulted because of the lowered resisting power of the patient. This testimony was not controverted.

2. The law under consideration relates to accidental personal injuries to employees arising out of industrial occupations. The Workmen's Compensation Law is not a scheme of health insurance, nor was it devised to insure against occupational or general diseases: *Iwanicki* v. *State Industrial Acc. Com.,* 104 Or. 650 (205 Pac. 990, 29 A. L. R. 682). Before the State Industrial Accident Commission is empowered to compensate a claimant by reason of pneumonia, such disease must be traceable to an accidental personal injury arising from and in the course of his employment. It may be said in general that disease arising in the course of employment is not within the embrace of the compensatory provisions of the act. However, if the disease arises from an accidental personal injury received in the course of his employment in a hazardous occupation, as defined by the law, such disease does come within the embrace of the Compensation Act.

In the case of *Iwanicki* v. *State Industrial Acc. Com., supra,* this court, speaking through Mr. Chief Justice BURNETT, said, at page 664:

"No one disputes that if an accident happens within the true meaning of the term, which brings

on a subsequent disease, the ailment may be counted as part of the injury, but the initiative must be found in the suddenness and unexpectedness of what is termed 'accident.' "

The books contain many illustrations of accidental personal injuries resulting in pleurisy and pneumonia.

In the case of *Anderson* v. *Industrial Insurance Commission of Washington,* 116 Wash. 421 (199 Pac. 747), the claimant, while engaged in an extra-hazardous occupation, received a cut in his foot from an ax. His wound was dressed and he was placed in bed, but, complaining of being cold, he was taken to a stove in the bunkhouse where a hot fire was burning. Later in the day he asked to be taken to his home, some twelve miles distant. An automobile was called but, owing to the fact that it could not be brought within a mile of camp, it was necessary for Anderson to walk that distance in order to reach it. The weather was cold and the claimant was exposed to it until he arrived home at about 7 o'clock in the evening. Soon after reaching home his wound was again dressed. Thereafter he complained of being cold and had a chill. Two days later he developed a case of pneumonia, from the effects of which he died. After reciting the facts of the case the Supreme Court of Washington, speaking through Mr. Justice FULLERTON, wrote:

"There is but little conflict in the evidence. The medical witnesses testify that the ax wound of itself would not cause pneumonia, yet all agree that the wound and the resultant weakened condition of Mr. Anderson rendered him much more susceptible to the disease than he otherwise would have been, had he maintained his ordinary robust health. All of them testify, moreover, that it was not beyond probability that he acquired pneumonia from his

114 Or.—26

exposure to the weather because of his weakened condition, and some of them testify that it was highly probable that he did do so.

"There is, of course, no question of contributory negligence or fault involved. * *  Nor is it necessary that the ax wound should have been of itself the cause of the death. It is sufficient if it was the proximate cause—the cause which directly set in motion the train of events which brought about the death.

"In our opinion the evidence justifies this conclusion, and the judgment of the superior court will stand affirmed."

See, also, in this connection, *Breslauer Company* v. *Industrial Com.,* 167 Wis. 202 (167 N. W. 256); *Vogeley* v. *Detroit Lumber Co.,* 196 Mich. 516 (162 N. W. 975); *Folts* v. *Robertson,* 188 App. Div. 359 (177 N. Y. Supp. 34); *Fort Wayne Rolling Mill Corp.* v. *Buanno,* 69 Ind. App. 464 (122 N. E. 362); *Wolford* v. *Geisel Moving & Storage Co.,* 262 Pa. 454 (105 Atl. 831); *Gilcrest Lumber Co.* v. *Rengler,* 109 Neb. 246 (190 N. W. 578, 28 A. L. R. 200).

The following illustrative cases are found in 1 Workmen's Compensation Law, Schneider, at Section 232:

In the case of *Brown* v. *Watson,* 7 B. W. C. C. 259, a miner, perspiring as a result of his work, was compelled, because of a breakdown of the machinery, to stand in a shaft exposed to a draft of cold air, from which he contracted pneumonia, causing death. In that case it was held that the man's death resulted from an injury by accident.

In the case of *Majeau* v. *Sierra Nevada Wood & Lumber Co.,* 2 Cal. I. A. C. D. 443, a workman engaged as a lumberman, who was confined to the hospital because of a fractured leg, developed pneu-

monia and died, death being hastened by his poor physical condition caused by his confinement and inaction. Held: that the pneumonia and consequent death was due to the accidental injury.

Again, the author cites the case of *Bergstrom* v. *Industrial Com.*, 286 Ill. 29 (12: N. E 195), wherein an employee developed pneumonia as the result of an automobile trip he had taken while convalescing from an injury to his ankle. Held: That the pneumonia resulted from an injury received in the course of his employment.

From the text of that Section 232, we quote the following excerpt from pages 439, 440:

"Lowered vitality following injury to the chest cavity or to other parts of the body terminated in death from pneumonia in five cases, the awards of which the Appellate Division affirmed unanimously and without opinion, to-wit: a laborer who strained his side by heavy lifting and walked home through cold and snow; an aged workman who slipped, fell and hurt his hand and arm, infection resulting; a shoe treer, whose exertion and bending over his work caused a hernia; a laborer who cut his little finger while washing bottles, infection resulting; and a coal-hoist engineer who sprained his ankle in a complete somersault over a stair railing, while descending to get his pay envelope."

In the case before us, was the pneumonia caused by the accidental injury received by Robertson in the course of his employment by Stockton Brothers? Had we been the trier of facts, it is possible that we might have decided this issue in favor of the Commission. However, the jury found in favor of the claimant. It is not our province to weigh the evidence. But it is our duty to determine whether this finding is supported by some competent evidence.

"It may be 'slender.' It must be evidence, however, and not speculation, surmise, or conjecture. *Von Ette's Case*, 223 Mass. 60 (111 N. E. 696, L. R. A. 1916D, 641); *Sponatski's Case*, 220 Mass. 526 (108 N. E. 466, L. R. A. 1916A, 333)." *Mailman's Case*, 118 Me. 172, 177 (106 Atl. 606, 608).

3. From an inspection of the record before us, we find some evidence that tends to trace the injury and its resultant illness to a definite time, place and cause: *Matthiessen* v. *Industrial Board*, 284 Ill. 378 (120 N. E. 249). According to the testimony there is some evidence of a "causal connection between the accident and the disability for which compensation is claimed."

4. In reviewing the record, every legitimate inference which can arise from the evidence adduced by claimant must be drawn in his favor. Mindful of this principle we have no right, in view of the record and the imperative language of our organic law hereinbefore quoted, to set aside the judgment from which the appeal is taken.

5. There is another reason why this cause must be affirmed: Upon appeal the Commission is restricted to the theory taken by it in making its defense in the court below: *Wallace* v. *American Life Ins. Co.* (Or.), 225 Pac. 192, 197, and local citations therein noted. The record contains no motion to take this case from the jury on the ground, as here contended, that there is no evidence, or that there is a want of sufficient evidence, showing a "causal connection between the accident and the disability for which compensation is claimed."

6. It is a rule of practice in this state that a motion for nonsuit must specify the grounds therefor, and unless it does so an appellate court will not

review the action of the trial court in denying the motion: *Ferguson* v. *Ingle*, 38 Or. 43 (62 Pac. 760), and authorities there cited. To the same effect, see *Meier* v. *Northern Pacific Ry. Co.*, 51 Or. 69 (93 Pac. 691); *Daniels* v. *Foster & Kleiser*, 95 Or. 502 (187 Pac. 627).

This case is affirmed.                    AFFIRMED.