HASTINGS v. TRAVELERS' INS. CO.

(Circuit Court, W. D. Washington, N. D. May 24, 1911.)

No. 1,898.

*(Syllabus by the Court.)*

INSURANCE (§ 455*)—RISKS INSURED—ACCIDENT POLICY.

In an action on a policy of accident insurance insuring against "bodily injuries effected directly and independently of all other causes through external, violent and accidental means," it appeared that the assured, a man of 54 years of age, normal height and weight, raised and lowered himself repeatedly in and from a Morris chair by the use of his hands and arms alone; that such exertions caused his death by dilation of the heart, which, on post mortem examination, proved to be enlarged and the valves hardened. *Held* that, as the exertions were voluntary and intended, the only element of accident was the result, for which there was no liability under the policy of insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1166–1169; Dec. Dig. § 455.*

Accident insurance, risks and causes of loss, see notes to National Acc. Soc. v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

At Law. Action by H. H. A. Hastings, as executor of George W. Dunlap, against the Travelers' Insurance Company. Heard on motion for directed verdict. Jury instructed to find for defendant.

Hastings & Stedman, for plaintiff.
Bamford A. Robb, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DONWORTH, District Judge. This is an action on a policy of insurance issued by the defendant to George W. Dunlap, insuring him "against bodily injuries, effected directly and independently of all other causes through external, violent and accidental means."

The second amended complaint alleges that Mr. Dunlap, who weighed about 180 pounds. "was vigorously raising himself in and from an arm chair in which he was then sitting, by placing his hands on the arms of said chair and raising himself up from said chair and lowering himself again in said chair by his hands and arms; that he did these acts several times at said time in close succession." It is further alleged that the effort produced an unusual, extraordinary, and unforeseen and not anticipated sprain and strain of the muscles of the heart, resulting in a dilation of the heart; that the overexertion was "so great as to produce a collapse of the organs of his system; and that he died as a result and on account thereof."

The defendant denies the allegations as to the cause of death, and pleads that the death resulted from pre-existing diseases and bodily infirmities.

The evidence shows that on the evening of January 18, 1910, George W. Dunlap, 54 years of age and of normal stature, was sitting with his wife in their lodgings in Pasadena, Cal. They had taken a long walk during the day, and he seemed to be in good health. He first sat in a rocking chair, and raised and lowered himself several times in the chair by the use of his hands and arms alone, remarking that he was pretty strong for an old man. He then moved from the rocking chair to a Morris chair and repeated the same exercise two or three times. He then gasped for breath and in a few moments died. A post mortem examination was held the next day by a capable physician, who discovered that prior to death Mr. Dunlap had an enlarged heart and hardened valves; but the immediate and proximate cause of death was his physical exertions, which produced a dilation of the heart.

Several physicians have testified concerning the usual condition of the heart of the average man of Mr. Dunlap's age and stature, and have expressed their opinions as to whether such a man can ordinarily undergo physical exercise of this character without injury. While these opinions do not altogether coincide, I do not consider them in conflict as to any material point in the case.

The evidence being all in, the defendant has moved the court to instruct the jury to find for the defendant on two grounds: First, that it appears from the evidence that the death of Mr. Dunlap was not caused by "external, violent and accidental means," but was the result of intentional acts; the only element of accident being the result itself. Secondly, that it appears from the evidence that the death of Mr. Dunlap was caused, in part at least, by a pre-existing enlargement of the heart and hardening of the valves.

The essential facts of the case are fairly free from controversy. There is no dispute as to what violence, if any, led up to the death of the deceased. It is admitted by the plaintiff that the only violence was the act of the deceased himself in lifting himself up and down

two or three times in a chair, possibly two or three times in one chair and two or three times in another chair very soon afterwards. The question is whether the death brought about in that way was caused by "external, violent and accidental means." Counsel for the respective parties have briefed the case with much research, and yet from the cases cited it does not appear that any court has ever held affirmatively on the question stated. It has been held that where a person is taking exercise with apparatus of some kind, and something unexpected happens causing injury, the case may be considered one of accident. Rustin v. Standard Life & Accident Co., 58 Neb. 792, 79 N. W. 712, 46 L. R. A. 253, 76 Am. St. Rep. 136; McCarthy v. Travelers' Insurance Co., 15 Fed. Cas. 1,254. So, also, where a person is lifting an object or handling a tool. Horsfall v. Pacific Mutual Life Insurance Co., 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846; Standard Life & Accident Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 51, 74 Am. St. Rep. 112; Insurance Co. v. Burroughs, 69 Pa. 43, 8 Am. Rep. 212; Pervaugher v. Union Casualty Co., 85 Miss. 31, 37 South. 461; Atlanta Accident Association v. Alexander, 104 Ga. 709, 30 S. E. 939, 42 L. R. A. 188; Martin v. Traveler Insurance Co., 1 Fost. & F. 505. The lodging of meat in the windpipe during eating has been held to be an accident. American Accident Co. v. Reigart, 94 Ky. 547, 23 S. W. 191, 21 L. R. A. 651, 42 Am. St. Rep. 374. So, also, as to a death from blood poisoning brought about by a new shoe which caused an abrasion on the foot. Western Commercial Co. v. Smith, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653. Undoubtedly death resulting from a fall may be accidental. Meyer v. Fidelity & Casualty Co., 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374; Hall v. American Masonic Accident Association, 86 Wis. 518, 57 N. W. 366. No authority more in point than the cases just mentioned has been called to my attention by plaintiff's counsel. Some of the language contained in the opinion in the case of Horsfall v. Pacific Mutual Life Insurance Co., 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846, if understood literally without regard to the facts of that case, would tend to sustain plaintiff's contention that where a rupture of the heart, not intentional, is the immediate cause of death, the case is one of liability under a policy of this kind. The language of the opinion, however, must be restricted in its application to the case which the court had before it, and, when it is so restricted, the case cannot be considered an authority in plaintiff's favor. There were two elements in that case which might properly be treated as involving the element of accident, namely, the fact that the insured was carrying a heavy weight, and the further fact that while so carrying the weight he was obliged to step along and off of a pile of iron. It fully appears that there was opportunity for miscalculation and for mistake as to the nature of the acts which the insured attempted.

In this case I do not see how a recovery can be had without abolishing the distinction between accident and heart disease. A man may rise suddenly out of a sitting posture and die of a rupture of the heart. Can it be claimed that his death results from "external, violent and

accidental means" on its being shown that if he had risen more slowly he probably would not have died at that time? Men frequently take exercise without apparatus by moving their bodies or their limbs one way or another. Is it reasonable to say that a person dies by "external, violent and accidental means" who ruptures his heart while taking such exercise, not having encountered any external object, and there being no cause for the heart injury other than the intended movement of body and limbs?

The words of the policy are to be taken in their plainly understood, everyday meaning. It would surely surprise the average layman to be informed that a man who intentionally lifts himself up in a chair by the arms, and thereby injures his heart so as to produce death, dies by "external, violent and accidental means."

The case should be submitted to the jury if there were any room to find that there was any miscalculation, anything unforeseen, or unintended in the events leading up to the death of the deceased. In other words, if there had been anything in the act of the deceased which was unforeseen, unexpected, or miscalculated, then it would be a question for the jury as to whether that accidental element caused the death. But it is admitted here by the plaintiff that the act of the deceased in lifting himself by his hands and letting himself down was precisely the movement that he was intending to perform and desirous of performing. There was no slipping of the hands or of the body or of the chair. So far from there being any element of chance or miscalculation or the unexpected, the movement was accomplished precisely as contemplated. The only mistake the deceased made was in miscalculating the strength of his heart.

These views are in accord with United States Mutual Accident Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60. It appeared in that case that the deceased jumped from a platform to the ground beneath, and in so doing injured himself so that he died. The trial judge instructed the jury as follows:

"We understand, from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice, and not from any perilous necessity. He encountered no obstacle in jumping, and he alighted on the ground in an erect posture. So far we proceed without difficulty; but you must go further and inquire, and here is the precise point on which the question turns: Was there or not any unexpected or unforeseen or involuntary movement of the body, from the time Dr. Barry left the platform until he reached the ground, or in the act of alighting? Did he or not alight on the ground just as he intended to do? Did he accomplish just what he intended to, in the way he intended to? Did he or not unexpectedly lose or relax his self-control in his downward movement? Did his feet strike the ground as he intended or expected, or did they not? Did he or not miscalculate the distance, and was there or not any involuntary turning of the body in the downward movement, or in the act of alighting on the ground? These are points directly pertinent to the question in hand.

"And I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred, changing or affecting the downward movement of his body as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated or would naturally anticipate, then

any resulting injury was not effected through any accidental means. But if, in jumping or alighting on the ground, there occurred, from any cause, any unforeseen or involuntary movement, turn, or strain of the body which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he expected to make, or as it would be natural to expect to make under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means."

This instruction and others to the same effect were approved by the Supreme Court. The principle that they embody is applicable to this case and is decisive. I cannot submit to the jury the question submitted in the Barry Case, because that would be to submit a question on which there is not the slightest evidence to sustain the plaintiff's right to recover.

Undoubtedly insurance policies are to be liberally construed in favor of the insured so as to promote and not defeat the purpose intended by the parties, namely, indemnity against injuries resulting from accident. To subject the defendant, however, to a judgment on this evidence, would be to go against both the letter and spirit of the contract. It cannot be assumed that the deceased, when he took out this policy, expected an indemnity for death resulting wholly from his intended acts.

For the reasons stated, the jury will be instructed to find for the defendant.