Argued July 6, reargued September 28, affirmed October 5, 1926.

## R. DONDENEAU v. STATE INDUSTRIAL ACCIDENT COMMISSION.

### (249 Pac. 820.)

**Master and Servant—Injury to Eye by Irritation from Heat, Smoke and Overexertion While Fighting Fire, Held Compensable as "Accident" (§ 6626, Or. L.).**

1. Employee, who, while fighting fire for four days, contracted inflammation in his left eye which developed into glaucoma, induced by heat, smoke, and overexertion, *held* to have sustained an injury by "accident," within Section 6626, Or. L., it being immaterial that he could not fix exact date of injury.

Master and Servant.

2. Workmen's Compensation Act should be liberally construed (Laws of 1913, p. 188).

---

Accord and Satisfaction, 9 C. J., p. 427, n. 45, p. 428, n. 51.
Workmen's Compensation Acts, C. J., p. 40, n. 95, p. 63, n. 7, p. 64, n. 10, 11 New, p. 72, n. 69, p. 80, n. 25.

From Multnomah: Robert Tucker, Judge.

In Banc.

This is an appeal from the judgment in favor of the respondent against the defendant for compensation under the Workmen's Compensation Act. We adopt the statement of the defendant as being fair and impartial.

"R. Dondeneau, the respondent, was employed during August, 1924, by the Eagle Lumber Company at West Timber, Washington county, Oregon, as a brakeman on the logging train of said company. During the time of such employment, both he and his employer were under the protection of the Workmen's Compensation Act of this state. On the fifth day of August a forest fire broke out and it became necessary for the plaintiff to abandon his work as a brakeman in order that he might assist in fighting such fire. He was engaged in this work of fighting fire for four days, working long hours because of the emergency. During this period of four days, the weather was hot and he came in contact with the smoke from the forest fire. Thereafter an inflammation arose in his left eye and he developed a case of glaucoma in that eye, it being agreed between the parties that this condition was "induced by the irritation from such heat, smoke and overexertion." Thereafter and within the time provided by law, R. Dondeneau filed his claim for compensation with the State Industrial Accident Commission on account of the condition of his left eye. This claim was rejected by the commis-

---

2. See 28 R. C. L. 755.

sion on the ground that the condition of Dondeneau's eye was not the result of an accidental injury as defined in the Workmen's Compensation Law.

"Thereafter the claimant, R. Dondeneau, through his attorney and the State Industrial Accident Commission, entered into an agreed statement of facts and submitted the question to the circuit court for Multnomah county for its decision as to whether or not the condition of Dondeneau's left eye was the result of an accidental injury within the terms and provisions of the Workmen's Compensation Act, said matter being submitted to said court without action pursuant to the terms and provisions of chapter 13, title II, Oregon Laws. This matter came on for hearing upon said agreed statement of facts before the circuit court for Multnomah county on the twenty-sixth day of May, 1925. That court found as a matter of law from the facts submitted that the condition of Dondeneau's left eye was the result of an accidental injury within the terms and provisions of the Workmen's Compensation Law and made and entered a judgment in his favor. From this judgment, the State Industrial Accident Commission appeals to this court."

Affirmed.

For appellant there was a brief over the name of *Mr. I. H. Van Winkle*, Attorney General, with an oral argument by *Mr. Miles H. McKey*, Assistant Attorney General.

For respondent there was a brief and oral argument by *Mr. W. S. U'Ren*.

COSHOW, J.—We commend the attorneys for the litigants in this appeal for reducing the issue to one controversy. This method of presenting the case relieves the court of a large amount of time often occupied in searching authorities and considering questions concerning which no dispute should arise. The

statement of fact upon which the action was tried is brief and included only matters necessary to be considered in determining the one legal question involved. With commendable candor the learned Attorney General in his well-prepared statement and brief specifically states that the claim of the respondent was presented to the appellant within the time provided by law, consequently the only question is whether the injury for which the claimant seeks compensation was the result of accidental means.

1. The authorities are in irreconcilable conflict regarding the liability of an insurer against accidents. This subject matter is discussed exhaustively in *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619 (267 S. W. 907, 39 A. L. R. 56), decided November 5, 1924. Appellant relies confidently upon the opinion in that case. Because it discusses the subject at great length and refers to a large number of cases representing different conclusions reached upon similar facts in different jurisdictions, it is not deemed necessary to cite or discuss at length more than a very few authorities. In the Caldwell case the court states the different constructions of accident insurance in the following language:

"There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen.

"The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of

mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."   305 Mo. 625 (267 S. W. 908.)

Oregon is committed to the first line of cases—that is in order for the insured to recover under the ordinary policy of accident insurance it is necessary for the injury to have been caused by accidental means; it is not sufficient that the result only should have been accidental: *Kendall* v. *Travelers' Protective Association,* 87 Or. 179 (169 Pac. 751). An illustration of the liability of an insurer against accidental injury as construed in the Kendall case may be aptly made thus: A person accidentally scratches his hand on his tie pin which unknowing to him protrudes beyond his tie. The scratch occurs by chance. It is a mishap. In itself it is trivial but owing to some unforeseen and unknown circumstances blood-poisoning results and death follows. The insurer would be liable under the policy. Another man intentionally uses his tie pin to remove a sliver in his hand or to open a blister and blood-poisoning unexpectedly results causing the insured's death. His beneficiaries cannot recover under the policy because he intentionally used the pin in the way and manner he did.

The language used in the policy fixing the liability of the insurer in the Caldwell case is as follows: "The policy holder is insured from bodily injuries * * through external, violent and accidental means." In that case, as in the instant case, the sole question was what is meant by accidental means. The injuries for which compensation is awarded under our statute is defined as follows:

" * * a personal injury by accident arising out of and in the course of his employment caused by violent or external means, * * . "   Or. L., § 6626.

There is no doubt that the injury from which the claimant in the instant case suffered was both external and violent. For the purpose of this opinion only, but not so deciding, we assume that the language of our statute requires the same construction as the language of the policy in the Caldwell and Kendall cases. There can be no doubt that the result of respondent's effort was unexpected and unusual. The attorney for defendant argues in his brief thus:

"It is very unlikely that a normal eye would have become so diseased; this conclusion being sustained by the fact that his right eye was in no way affected by the heat, smoke and overexertion. * * We know from experience that a normal eye would probably not be affected in such a manner by heat, smoke and overexertion."

But we could as applicably assume that the injured eye received an unusually strong blast of some gas, aggravated by ashes or cinders and intense heat, as we can entertain the suggestion of the learned attorney general as to the defective condition of the eye. It was said by this court in *Iwanicki v. State Industrial Accident Commission,* 104 Or. 650, 664 (205 Pac. 990, 29 A. L. R. 682):

"No one disputes that if an accident happens within the true meaning of the term, which brings on a subsequent disease, the ailment may be counted as a part of the injury, but the initiative must be found in the suddenness and unexpectedness of what is termed 'accident.' "

Stipulation VII of the agreed statement of facts is as follows:

"It is further stipulated and agreed that while plaintiff was so employed and during the fire he was almost continually in contact with the heat and smoke thereof which set up a condition of glaucoma in his

left eye, this condition being induced by the irritation from such heat, smoke and overexertion."

It cannot be denied that the respondent was injured in the course of his employment. He was required as an employee of the company to fight the fire as well as by the law of the state. The fire itself was an unlooked for event. It was a mishap, an accident. The respondent voluntarily entered into the work of fighting the fire, but he did not intentionally admit the poisonous gas and smoke into his eye. The fact that the injury was caused by smoke or gas together with superexertion does not change the cause of the injury. It is as much an accident as though a live cinder had been received into the eye and the eye burned, resulting in the loss of sight. The means of the injury was unexpected and unusual. So rare, so unexpected was this injury that the learned attorney general seeks to account for it as being due to an inherent defective eye. It would be hard to conceive of any injury better answering the definition of "accident." If the respondent had slipped and fallen and thereby sustained an injury, it would not be denied that such injury was caused by accidental means. But the same argument could be advanced that he went voluntarily to fight the fire. The accident would have occurred while fighting the fire. By voluntarily fighting the fire he encountered many unusual risks. The unusual nature of the injury seems to have been the controlling reason for denying compensation to the respondent by the appellant. It would seem that the very unusualness of the means, as well as of the result, tend to magnify the accidental nature of the means as well as the result of the injury. The cause as well as the effect is an extremely rare accident. Events are called accidents because they are not an-

ticipated, not expected, unusual and out of the ordinary. But it is argued because this occurrence is extremely rare it was due to some inherent weakness of the eye and therefore it is not an accident.

"Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means." 1 C. J. 427, § 73, and long list of authorities cited under note 45.

In the instant case the injured eye was not the natural or probable consequence of respondent's conduct; the injury does not ordinarily follow such efforts and could not be reasonably anticipated; the respondent did not intend to produce the effect and is not charged with a design of producing such effect. He suffered the injury, therefore, by accidental means. To hold otherwise would be to defeat the prime purpose of enacting the statute as expressed in its preamble.

2. It is further argued that inasmuch as the respondent cannot fix the exact date of the injury to the eye it is therefore not accidental. Such a construction would be too strict. Injuries are frequently suffered accidentally resulting seriously when the victim cannot name the exact time of receiving the injury. Hernia is frequently suffered by a mischance, mishap or accident when the victim cannot recall the exact time when he received the injury. The respondent could have received the injury to the eye during any one of the four days of the fire and yet not be able to tell the exact time the injury was received. The injury is no less the result of acci-

dental means on that account. A man fighting fire during four days may have stumbled over an obstruction every day many times and in one of his falls could have suffered a rupture. In his concentration upon his work, his supreme efforts to control the fire, he would not know when he suffered the hernia. It would be no less an accident on that account. So in the instant case the fact that the respondent cannot mention any particular time during the four days he was so strenuously working to serve his employer and other persons' property when the smoke entered the eye in such quantity and under such conditions as to permanently destroy the sight thereof does not cause the means of the injury to be any less accidental. The smoke and poisonous gas were not admitted into his eye purposely. He did not anticipate that gas and smoke would enter his eye in such quantity as to permanently injure it. It was very unusual for it to have done so. The agreed statement of facts admits that the sight of the eye was lost as a result of the smoke and overheating of the respondent. To deny him compensation under such circumstances is to construe the Workmen's Compensation Act with extreme strictness instead of liberally as it should be: *Stark* v. *State Industrial Accident Commission,* 103 Or. 80, 87 (204 Pac. 151); *United Paperboard Company* v. *Lewis,* 65 Ind. App. 356, 361 (117 N. E. 276, 277). In page 360 the court in the last case cited says:

"On the other hand it is generally accepted that a disease which is not the ordinary result of an employee's work, reasonably to be anticipated as a result of pursuing the same, but contracted as a direct result of unusual circumstances connected therewith, is to be considered an injury by accident, and comes within the provisions of acts providing for compen-

sation for personal injury so caused." (Citing a large number of authorities.)

First Honnold on Workmen's Compensation, 279, 280, Section 85, lays down the rule thus:

"It (accident) is something capable of being assigned to a particular time and place of which notice can be given. This has been held, however, not to mean capable of being assigned to some particular moment or hour of time. It follows that there is no 'injury by accident' within a Workmen's Compensation Act, when no specific time or occasion can be fixed upon as the time an alleged accident occurred."

Literally construed it would follow that if the respondent had worked but one day or half a day and received the injury, he could recover. But inasmuch as he worked almost continuously four days and during that period received the injury, he cannot recover because he cannot specify the exact day or hour that he received the injury to his eye. We believe the better rule, the rule in keeping with the spirit of the Workmen's Compensation Act, to have been stated by Professor Francis Bohlen of the University of Pennsylvania Law School in an article on Personal Injury by Accident as follows:

"The term 'by accident' has been consistently construed to include two different ideas: the first is that of unexpectedness; the second, that of an injury sustained on some definite occasion, the date of which can be fixed with reasonable certainty. The first idea would be as well conveyed by the word 'accidentally' or by any phrase or phrases in which unforeseen harm is sharply contrasted with harm intended to result. The latter idea, it is submitted, is not necessarily included in the term 'accidental' or 'accidentally'; such words, especially if the phrases employed in such legislation are to be construed in accordance with the popular meaning of the terms used, do not

appear necessarily to indicate the existence of an accident, but would seem to relate solely to the injury being neither intended nor expected." 25 Harvard Law Review 337.

In the instant case the "occasion" was the forest fire. The date was the four days in which respondent was at work. The date is reasonably certain. We are of the opinion that time in relation to an accident is relative. In the instant case the respondent was engaged for four days almost continuously in combating the progress of the fire. He was on duty in this behalf for 36 hours without relief. All his time was occupied and may be properly referred to as one period. In this one period he suffered the injury. We think that this satisfies the requirement that the occurrence to be accidental must refer to a definite period of time. Other helpful cases are: *American Accident Co.* v. *Reigart*, 94 Ky. 551 (23 S. W. 191, 4 Am. St. Rep. 374, 21 L. R. A. 651); *McGlinchey* v. *Fidelity & Casualty Co.*, 80 Me. 251, (14 Atl. 13, 6 Am. St. Rep. 190); *Raina* v. *Standard Gaslight Co. of N. Y.*, 193 App. Div. 54 (183 N. Y. Supp. 264); *Yates* v. *South Kirby, F. & H. Collieries, Ltd.*, 2 K. B., 3 N. C. C. A. 538; *Riley* v. *Mason Motor Car Co.*, 199 Mich. 233 (165 N. W. 745); *Tintic Milling Co.* v. *Industrial Commission of Utah*, 60 Utah, 14 (206 Pac. 278, 23 A. L. R. 325); Schneider on Workmen's Compensation Law, 399–402.

The case of *Iwanicki* v. *State Ind. Acc. Com.*, 104 Or. 650 (205 Pac. 990, 29 A. L. R. 682), is not in point. The question involved there was whether or not lead poisoning caused by a workman holding tacks having a lead coating in his mouth while at work was an accident. Lead poisoning is an occupational disease. It is an expected result from continuous con-

tact with lead, especially where the contact is of such a nature as to cause the lead to be absorbed into the system.

The case at bar is not unlike in principle *Hood* v. *Maryland Casualty Co.*, 206 Mass. 223 (92 N. E. 329, 138 Am. St. Rep. 379, 30 L. R. A. (N. S.) 1192), where the insured contracted glanders through handling diseased horses. He was allowed to recover because he did not know the horses were diseased. He was therefore injured by accidental means. We cannot conceive that if the insured had been handling horses for four days and could not tell the particular day on which he became infected that he would have been denied a judgment. Other cases similar in substance are *United States Casualty Co.* v. *Griffis*, 186 Ind. 126 (114 N. E. 83, L. R. A. 1917F, 481, involving death from eating tainted or poisonous mushrooms. Recovery was permitted because the insured did not intentionally eat poisonous mushrooms. When he ate them he believed them to be wholesome. In eating them, however, he assumed the risk. So in the instant case the respondent did not intentionally admit into his eye smoke in such quantity and under such circumstances as to permanently injure his eye. He did not intentionally overexert himself. He was doing his duty, desperately trying to prevent the destruction of his employer's and other persons' property. The injury was unexpected and unusual. It was therefore the result of accidental means. *Sullivan* v. *Modern Brotherhood of America*, 167 Mich. 524 (133 N. W. 486, Ann. Cas. 1913A, 1116 42 L. R. A. (N. S.) 140). Insured unintentionally splashed water in her eye while doing the family washing. She rubbed her eye with her finger. Gonorrheal infection set in, and she lost her eye. She re-

covered under her policy. She doubtless intentionally rubbed her eye. The water was accidentally splashed into her eye. Whether the infection was caused by the splashing of the water or the rubbing of her eye with her finger is not known. So in the instant case the respondent was intentionally fighting the fire, but he had no intention of receiving the injury he sustained while doing so. The injury was received accidentally.· Other instructive cases are: *Gallagher* v. *Fidelity & Casualty Co.,* 163 App. Div. 556 (148 N. Y. Supp. 1016), affirmed 221 N. Y. 664 (117 N. E. 1067), without opinion; *Lewis* v. *Iowa State Traveling Men's Assn.,* 248 Fed. 602; *Elsey* v. *Fidelity & Casualty Co.,* 187 Ind. 447 (120 N. E. 42, L. R. A. 1918F, 646). The cases might be multiplied almost indefinitely. The authorities are in irreconcilable conflict. Different jurisdictions have reached opposte results upon apparently identical facts. Giving to the Workmen's Compensation Act of this state a liberal construction as this court has held should be done, we have no hesitancy in affirming the judgment of the Circuit Court. It is so ordered.                    AFFIRMED.

BURNETT, J., dissents.

RAND, J., did not participate in this opinion.

BURNETT, J., Dissenting.—This case was submitted upon an agreed statement of facts, of which the following is a copy, omitting the signatures of counsel:

"It is hereby stipulated and agreed by and between the parties hereto by their respective attorneys:
"I.
"That plaintiff is a resident and inhabitant of the county of Multnomah in the state of Oregon.

"II.

"That the defendant is the lawfully authorized agent of the state of Oregon for the administration of the Workmen's Compensation Act of the state of Oregon.

"III.

"It is mutually stipulated and agreed that the plaintiff, R. Dondeneau, was employed by the Eagle Lumber Company, a corporation, at West Timber in the county of Washington in the state of Oregon on the fifth day of August, 1924, as a brakeman on the logging trains of said company.

"IV.

"That the said corporation and the plaintiff herein were both subject to the provisions and entitled to the benefits of the Workmen's Compensation Act of Oregon at the date of the alleged accident.

"V.

"It is mutually stipulated and agreed that there was a forest fire on the company's railroad line on the fifth day of August, 1924, and that in the course of his employment in that emergency he was required to assist in fighting said fire and did so assist.

"V.

"It is further mutually stipulated and agreed that this condition continued for approximately four days during which time he and other employees worked as continuously as possible, and at one stretch the plaintiff was on duty approximately 36 hours continuously.

"VI.

"It is further stipulated and agreed that the heat and smoke from the fire was very oppressive and the weather was very warm.

"VII.

"It is further stipulated and agreed that while plaintiff was so employed and during the fire he was almost continually in contact with the heat and smoke thereof which set up a condition of glaucoma in his left eye, this condition being induced by the irritation from such heat, smoke and over-exertion.

"It is further stipulated and agreed that plaintiff was treated by physicians for said condition of glaucoma; that he spent some time in hospitals and ultimately lost his vision in his left eye.

"Question mutually submitted by the parties hereto: 'Was the plaintiff's injury an accidental injury by violent and external means arising out of and in the course of his employment entitling him to the benefits of the Workmen's Compensation Act of Oregon for the loss of vision of one eye. If the court decides that this was such an accidental injury within the law, then judgment may be entered for the plaintiff in accordance with the statute in such cases made and provided, and if the court decides that this was not such an accidental injury, then judgment may be entered for the defendant without costs or disbursements as to either party, and without limiting or abrogating the right of either party to appeal from the decision of the court.' "

Plaintiff claims to have been injured by accident so as to entitle him to compensation under the Workmen's Compensation Act. The defendant is the Industrial Accident Commission. On this agreed statement of facts, the Circuit Court rendered judgment for the plaintiff and the Commission has appealed.

It is said in the stipulation that there was a forest fire on the line of the railroad belonging to the claimant's employer on August 5, 1924, which the claimant was required to assist in fighting, and that the contest continued for four days. Nothing unusual or sudden is claimed to have happened during the course of the fire. No specific time is stated when any "accident" occurred. There was nothing out of the usual run of such affairs. The whole intent of the statute is to cover injuries by accident or some unusual occurrence happening at a certain fixed date. As the very foundation of a claim, the application must be

filed, in nonfatal cases, within three months after the date upon which the injury occurred. Moreover, under Section 6634, Oregon Laws, it is required that the employer shall at once report the accident and the injuries resulting therefrom, stating the time, cause and nature of the accident and injuries. These expressions manifestly refer to some untoward occurrence causing the injury, the date of which can be definitely fixed, and does not mean a disease which comes on gradually and finally reaches an untoward culmination. The claimant must be able to specify in a claim a particular date when the accident occurred.

What, then, is a date? In *Heffner* v. *Heffner,* 48 La. Ann. 1088 (20 South. 281), the question was about a holographic will which the statute required to be written, dated and signed by the testator himself. The following was the form employed:

"Written, dated and signed in my own handwriting on this —— day of June, 1893."

Declaring against the validity of the will, Mr. Justice MILLER wrote:

"The date, in its ordinary sense, imports the day of the month, the month, and the year. That is also the legal significance of the date. The day of the month is quite as much a part of the date as the month or the year. If the law requires the holographic will to be dated, the exaction extends to every part of the date. * * The will must be dated, and the month, without the day, is no date."

See, also, *Interior Linseed Co.* v. *Becker-Moore Paint Co.,* 273 Mo. 433 (202 S. W. 566), where the question before the court was the construction of a contract in which no period of time less than a month was mentioned, and the court held that a particular

day of a certain month and a certain year were necessary to constitute a "date." Fixedness of date is a material ingredient of accidents under our statute. If a claimant in this statutory proceeding can spread the "date" of his accident over a period of four days, he can expand it to include four weeks or any greater length of time.

It is agreed that:

" * * while plaintiff was so employed and during the fire he was almost continually in contact with the heat and smoke thereof which set up a condition of glaucoma in his left eye, this condition being induced by the irritation from such heat, smoke and over-exertion."

Glaucoma is a progressive "disease of the eye the essential and characteristic symptom of which is an abnormally heightened intraocular tension, resulting in hardness of the globe, excavation of the papilla or optic disc, a restriction of the field of vision, corneal anesthesia, colored halo about lights, and lessening of visual power that may, if unchecked, proceed to blindness." Gould's Dictionary of Medicine, p. 521.

It is also defined as:

"An affection of the eye characterized by opacity of the vitreous humor, augmented tension of the globe, increasing dimness of sight, diminution of the field of vision, and ultimately blindness." Standard Dictionary, p. 1039.

One condition upon which the workman may claim compensation is thus stated in Section 6626, Oregon Laws:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent

or external means, he or his beneficiaries, or dependents, if the injury result in death, shall receive compensation according to the following schedule: * * "

We find in the stipulation that this is the "Question mutually submitted by the parties hereto: 'Was the plaintiff's injury an accidental injury by violent and external means arising out of and in the course of his employment entitling him to the benefits of the Workmen's Compensation Act of Oregon for the loss of vision of one eye?' "

In passing, it is well to distinguish between the term "accident" and the other expression "accidental injury." Our statute contemplates "accident" as the cause of an effect, the latter of which is termed "injury." In every instance, cause must precede effect and so in this case the accident which is the cause must precede the injury which is the effect. It is not every accident which results in injury; neither is every injury compensable. Only those injuries caused by a precedent accident constitute grounds for remuneration. For instance, while moving very slowly, the axle to one's automobile might break and disable the machine without injuring any person. There would be the accident or unexpected happening of the event of breaking the axle, but there could be no recovery under the Industrial Accident Law for there was no personal injury to anyone.

In *Rock* v. *Travelers' Ins. Co.,* 172 Cal. 462 (156 Pac. 1029, L. R. A. 1916E, 1196), the court distinguished between the term "accident" and "accidental injury," using the following language:

" * * The policy, it will be observed, does not insure against accidental death or injuries, but against injuries effected by accidental means. A differentiation is made, therefore, between the result to the in-

sured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus, in *Clidero* v. *Scottish Acci. Ins. Co.* 29 Scot. L. R. 303, Lord Adam said: 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.' *Re Scarr* (1905), 1 K. B. 387 (2 B. R. C. 358, 74 L. J. K. B. N. S. 237, 92 L. T. N. S. 128, 21 Times L. R. 173, 1 Ann. Cas. 787); *Feder* v. *Iowa State Traveling Men's Asso.*, 107 Iowa, 538 (70 Am. St. Rep. 212, 43 L. R. A. 693, 78 N. W. 252; *Southard* v. *Railway Pass. Assur. Co.*, 34 Conn. 574 (Fed. Cas. No. 13,182); *Smouse* v. *Iowa State Traveling Men's Asso.*, 118 Iowa, 436 (92 N. W. 53); *Lehman* v. *Great Western Acci. Asso.*, 155 Iowa, 737 (133 N. W. 752, 42 L. R. A. (N. S.) 562); *Appel* v. *Aetna L. Ins. Co.*, 86 App. Div. 83 (83 N. Y. Supp. 238); *Niskern* v. *United Brotherhood*, C. J. 93, App. Div. 364 (87 N. Y. Supp. 640); *Schmid* v. *Indiana Travelers' Acci. Asso.*, 42 Ind. App. 483 (85 N. E. 1033); *Bryant* v. *Continental Casualty Co.* (Tex. Civ. App.), 145 S. W. 636;

*Cobb* v. *Preferred Mut. Acci. Asso.*, 96 Ga. 818 (22 S. E. 976); *Fidelity & C. Co.* v. *Carroll*, 143 Fed. 271 (74 C. C. A. 409, 6 Ann. Cas. 955, 5 L. R. A. (N. S.) 657); *Shanberg* v. *Fidelity & C. Co.* (C. C.), 143 Fed. 651 (s. c. on appeal 158 Fed. 1, 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206); *Hastings* v. *Travelers' Ins. Co.* (C. C.), 190 Fed. 258.

"The same doctrine is recognized in *United States Mut. Acci. Asso.* v. *Barry*, 131 U. S. 100 (33 L. ed. 60, 9 Sup. Ct. Rep. 755). In that case, the Supreme Court upheld the propriety of an instruction to the jury 'that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means.' * * The theory of the court appears to have been that a death or injury by accidental means is shown where the death or injury is unforeseen or unexpected, even though there be nothing of an unusual or unexpected character in the act leading to the result. 'Any unusual and unexpected event attending the performance of a usual and necessary act' is said to be covered by such a policy as the one before us. We are unable to agree with this view. To our minds it fails to give effect to the plain language of the policy, in that it does not distinguish between the result to be insured and the means by which that result was brought about. As we have already pointed out, the insurance is not against accidental injury or death, but is against death resulting from injuries effected by accidental means. * * Briefly stated, the case is simply this: Rock undertook to carry a heavy casket down a flight of stairs. In carrying it down he did not slip or stumble, nor did the casket fall against him. The entire operation was carried out in precisely the manner intended and designed by Rock. The exertion which he thus assumed

was, however, beyond his strength, and imposed upon his vital organs a burden which, as it turned out, they could not bear. The result of this exertion was a dilatation of the heart and death. On these facts, which appear in the record without substantial conflict, it cannot be said that the plaintiff sustained the burden which was on her of proving that the death of the insured was caused by bodily injuries effected through accidental means.''

In *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406 (209 Pac. 26, 26 A. L. R. 116), the decedent was assisting in some plowing and it was alleged:

'' * * 'that the said plow which the said James G. Ogilvie was using at said time came in contact with a root or other obstruction unforeseen, causing said plow and its plow handle to be given a severe wrench, thereby causing the said James G. Ogilvie to be given a severe wrench and strain,' as a result of which his heart was ruptured and he died therefrom five days later.''

Criticising the instructions, the court said that, in effect, they instructed the jury:

''that, if the death of the assured was due to a rupture caused by a strain naturally incident to the exertion of plowing, but was an unexpected result thereof, the plaintiff could recover. It should not have been given, because 'it fails to give effect to the plain language of the policy, in that it does not distinguish between the result to the insured and the means by which that result was brought about. As we have already pointed out, the insurance is not against accidental injury or death, but is against death resulting from injuries effected by accidental means.' ''

In *Fidelity and Casualty Co.* v. *Carroll*, 143 Fed. 271 (74 C. C. A. 409, 6 Ann. Cas. 955, 5 L. R. A. (N. S.) 657), the decedent received an injury to his

hand by intentionally striking another, from which septicemia and death ensued. It was there held that the injury though unexpected and unusual was not caused by accident. In deciding against the claimant, the court said:

"There is a well defined distinction between a death resulting from an accident and one resulting from accidental means. As is well said in 3 Joyce on Insurance, section 2863, p. 208: 'A person may do certain acts the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death; but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.'

"In the case of *Feder* v. *Iowa State Traveling Men's Asso.*, 107 Iowa, 538 (78 N. W. 25, 70 Am. St. Rep. 212, 43 L. R. A. 693), the injury received resulted from an artery that was ruptured while the injured was reaching over a chair to close the window shutters. In that case the evidence showed that he did not fall, slip, or lose his balance. He did nothing which he did not foresee or plan, except the rupture of the artery. This was held not to be an accidental cause, within the meaning of the terms used in an accident policy. Among other things, the court said: 'Although a result may not be designed, foreseen, or expected, yet, if it be the natural and direct effect of acts voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental.' "

In *Schmid* v. *Indiana Travelers Acc. Assn.*, 42 Ind. App. 483 (85 N. E. 1032), the decedent went from Indianapolis to Colorado Springs where he carried two traveling bags up one hundred steps, as the result of which he died of heart failure almost immediately. It is stated in the syllabus that:

"Injuries resulting from ordinary acts, though the result of such acts was unexpected, if no unusual cir-

cumstances intervene, cannot be regarded as result-
ing from accident within the meaning of an accident
policy.''

Here is set down the whole of Section 73, 1 Corpus
Juris, page 427, which has been cited as opposed to
the view that this is not an ''injury by accident'':

''Where the effect is not the natural and probable
consequence of the means which produce it—an effect
does not ordinarily follow and cannot be reasonably
anticipated from the use of the means, or an effect
which the actor did not intend to produce, and which
he cannot be charged with a design of producing—it is
produced by accidental means.  This rule has been
applied to cases where death or injuries have been
caused by or resulted from accidental and uninten-
tional taking of poison, administration of chloroform
by physicians in preparation for a surgical operation,
a sudden attack of disease, such as vertigo or fits,
asphyxiation by unintentionally inhaling gas, inflam-
mation resulting from the use of a hypodermic needle,
an inflammation of the eye caused by the splashing
of water from a washtub which insured was using,
being thrown against an article of furniture, the bite
of a dog, blows, choking on food while eating, contact
with a poisonous substance, discharge of a loaded
gun, eating dangerous food, escape of steam, falls,
freezing or exposure to cold, fright, involuntary
drowning, jumping from moving train, lifting weights
or burdens, shooting, stepping off cars, striking a
blow, stumbling and falling under a train, the sting
of an insect, stooping, strain, a sudden wrench of the
body, suicide while insane, sunstroke, swinging Indian
clubs, and walking in sleep.

''An effect which is the natural and probable con-
sequence of an act or course of action cannot be said
to be produced by accidental means.  This rule has
been applied to death or injuries caused by or result-
ing from ordinary exertions, carrying heavy baggage,
lifting heavy weights, contact with a poisonous sub-

stance, jumping from railroad car, reaching out to close window, resisting arrest, riding a bicycle, stooping, or sunstroke.''

In all the precedents cited in support of the first part of this excerpt, there is the element of suddenness, of instantaneous injury, a characteristic which is entirely absent from the case at bar. Taken altogether, the section supports the contention that there is no point of time or ''date'' when happened any sudden mishap to which the claimant can point as the accident which caused the injury.

Even in Illinois, which gives compensation for accidental injuries sustained by any employee arising out of or in the course of his employment, it was said in *Peru Plow and Wheel Co.* v. *Industrial Commission,* 311 Ill. 216 (142 N. E. 546):

''There must be some definite thing happen which can be pointed to as the immediate cause of the breakdown although the employee may have been able to work in similar conditions for a considerable period of time prior to the happening of the event which is the immediate cause of his breakdown. That this must be considered the intention of the legislature in passing the act is shown by the provisions of the act limiting the time in which notice may be given to the employer. If a definite time cannot be ascertained it is impossible to give the notice required by the act.''

In *Liondale Bleach Dye & Paint Works* v. *Riker,* 85 N. J. L. 426 (89 Atl. 929), the claimant worked ten day in a bleachery and contracted a rash which it was said could be caused by acids. The trial judge found it was caused by contact with dampened goods but the Supreme Court held there was no accident shown, saying:

''The English courts seem at last to have settled that where no specific time or occasion can be fixed

upon as the time when the alleged accident happened, there is no injury by accident within the meaning of the act.   This seems a sensible working rule especially in view of the provisions of the statute requiring notice in certain cases in fourteen days of the occurrence of the injury—a provision which must point to a specific time. * * There may indeed be compensation awarded for resulting conditions where you can once put your finger on the accident from which they result; but the ground of the action fixed by the statute is the injury by accident, not the results of an indefinite something which may not be an accident."

In the light of these precedents which might be multiplied *ad libitum,* the stipulation does not state a casualty coming within the plain terms of the statute because it does not state any accident as the cause of the injury, but only an unexpected and untoward result.

Speaking in general terms, there are two classes of statutes: one like our own, where the workman "shall sustain a personal injury by accident arising out of and in the course of his employment," and the other form is where the employee receives "a personal injury arising out of and in the course of his employment."   Statutes like our own are found in Delaware, New Jersey, Wisconsin, Arizona, Colorado, Idaho, Kansas, Missouri, Nebraska, Vermont, Virginia, Utah, Tennessee, Maine, Kentucky, Indiana, Georgia, Rhode Island, New Mexico and South Dakota.   Of the latter sort are Massachusetts, New York, California, Connecticut, Iowa, Michigan, Montana, Nevada, Texas, West Virginia, Ohio, New Hampshire, North Dakota, Washington and Wyoming.

Pennsylvania has a statute which compensates an employee "for personal injury to or for the death of such employee by an accident in the course of his

employment.'' Thus far, the statute is like our own but in Section 21984 of the Pennsylvania statutes for 1920, the legislature promulgated the following definition:

''The term 'injury by an accident in the course of his employment' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment; but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon sustained by the employee, who though not so engaged, is injured upon the premises occupied by or under the control of the employer or upon which the employer's business or affairs were being carried on, the employee's presence thereon being required by the nature of his employment.''

This statutory definition of the term ''accident'' takes the Pennsylvania enactment out of the Oregon class and places it in the other class where the unexpected cause or accident is not an ingredient of the injury. Some states like Illinois, Maryland and Oklahoma compensate for disability or death of an employee resulting from an accidental personal injury; that is to say, those statutes contemplate only the effect and not the cause and hence, under the precedents already cited, are to be differentiated from our enactment.

Our statute does not, like many others, compensate for injuries suffered in the course of employment. The right in Oregon is more restricted in that compensation is awarded only for injuries which are

caused by a preceding accident arising out of and in the course of employment.

The situation authorizing compensation is composed of two elements: 1. The accident, and 2. The injury, or the cause and the effect. We must not confuse the cause with the effect. They are distinct from each other. Only such injuries are compensable as are caused by an accident happening in the course of the claimant's employment as a preceding cause.

So far as it appears by the record, the claimant purposely and intentionally exposed himself to the dangers of fighting a forest fire. The heat and smoke were the natural and expected characteristics of the situation. He voluntarily incurred their effect. They happened precisely as in every other forest fire. It is the cause and not the result which constitutes the accident and if the cause operates as such things uniformly do, there is no accident though the effect in the particular instance may be unusual.

As said in *Andrus* v. *Business Men's Association,* 283 Mo. 442 (223 S. W. 70, 13 A. L. R. 779):

"Where a result is produced by a means unexpected, unintended and unanticipated it is accidental; but if the act and the result produced are exactly in accordance with the intention of the actor, it was not accidental."

Here the claimant intentionally exposed himself to the heat and smoke of the fire and there is no more accident involved than in any other self-inflicted injury. Considering accident as cause and injury as the effect, and differentiating the two, manifestly the other men who fought the fire with the claimant experienced the same accident; i. e., exposure to the heat and smoke. There is no difference between them as to accident, but they escaped injury while he did

not.  Two persons are riding in an automobile which unexpectedly turns over.  One escapes injury but the leg of the other is broken.  Both were in the same accident but only one experienced an injury.

In *Caldwell* v. *Travelers' Ins. Co.,* 305 Mo. 619 (267 S. W. 907, 39 A. L. R. 56), the court gave a thorough review of this question, distinguishing the accident as the cause and the injury as the result, and reached the conclusion that where nothing unusual or unexpected happens in the means which produced the injury, the occurrence cannot be called an accident no matter if the injury was unexpected.  The review of some of the cases examined by the Missouri Supreme Court is here set down:

"In *Stokely* v. *Fidelity & Casualty Co.,* 193 Ala. 90 (69 South. 64, L. R. A. 1915E, 955) (1915), an operation was performed on insured to relieve appendicitis. The wound closed, and apparently progressed favorably.  There were no complications for 4 or 5 days, when insured went into a fit of vomiting and the wound was reopened and insured died.  It was held that the rupture of the stitches was not an accident causing the death, but was a failure of the means taken to prevent death from other independent causes.  It is quite similar on its facts to the case at bar.

"*Southard* v. *Assurance Co.,* 34 Conn. 574 (Fed. Cas. No. 13,182) (1868) : The insured jumped off a train without injury and hurried to another station to see someone.  He thereafter had only a short time to catch his train and ran part of the way back to the first station.  A rupture appeared.  Nothing unusual or unexpected in his movements in running was shown.  It was held that the jumping and running were intentional acts, and that the injury occurred through no mishap, and therefore there could be no recovery. * *

"*Bennetts* v. *Occidental Life Insurance Co.*, 39 Cal. App. 384 (178 Pac. 964 (1919): Insured died soon after lifting a heavy iron pipe. No mishap or unexpected event was shown to have occurred. The death was held not to be due to accidental means, following *Rock* v. *Ins. Co.*, *supra*.

"*Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669 (189 Pac. 835, 14 A. L. R. 784 (1920): Insured went bathing, and attempted to swim against a strong current, causing strenuous exertion. He began to bleed at the mouth, and several hemorrhages ensued, and death followed. He had been suffering from tuberculosis. It was held that there could be no recovery, and the opinion carefully differentiated between accidental death and death by accidental means.

"*Cobb* v. *Accident Assn.*, 96 Ga. 818 (22 S. E. 976 (1895): Insured was carrying some heavy baggage, and his eyesight was injured by the strain or overheating in that work. No slip or mishap of any sort was shown. The injury was held not to have been due to accidental means, and recovery was denied. * *

"*Husbands* v. *Travelers' Accident Assn.*, 194 Ind. 586 (133 N. E. 130, 35 A. L. R. 1184 (1921): Insured's death was directly due to a hemorrhage caused by his exertion in shaking down the ashes in a furnace. The case approves the *Schmid Case*, *supra*, and held there could be no recovery as for accident, and carefully differentiated between death by accident and death by accidental means.

"*Carnes* v. *Traveling Men's Assn.*, 106 Iowa, 281 (76 N. W. 683, 68 Am. St. Rep. 306 (1898): It was held that, where insured took morphine, knowing how much he was taking, and died as a result thereof, such death was not produced by accidental means, even though he did not know that such amount of morphine would produce death. A recovery was denied, and the court distinguished between an accidental death and death by accidental cause.

"*Smouse* v. *Traveling Men's Assn.*, 118 Iowa, 436 (92 N. W. 53 (1902): The insured had been ill with

pneumonia, and was apparently recovering, but was still very weak. Some friends called to see him, and his wife awakened him and told him of their visit, He made a sudden and strenuous effort to remove his nightshirt by pulling it over his head, and in some way sustained rupture of a blood vessel and died. The court held that, if the strenuous effort to remove the nightshirt was an intentional act, there could be no recovery. It was held that the case should be submitted to the jury on the question of whether the effort was intentionally made, and said there could be no recovery for the accidental result of an intentional act.

"*Lehman* v. *Accident Assn.*, 155 Iowa, 737 (133 N. W. 752, 42 L. R. A. (N. S.) 562 (1911): Insured was engaged in bowling, and while so engaged strained his side. Soreness ensued and appendicitis was found to have developed. Recovery was denied, and it was held that the injury was the unexpected result of an intentional act; that the means which inflicted the injury must be accidental and not the result. There was no slip or falling or unexpected movement on the part of the insured at the time he received the strain.

"*Fane* v. *Assn. of Railway Mail Clerks*, 197 App. Div. 145 (188 N. Y. Supp. 222 (1921): The insured was ruptured while lifting a heavy sack of mail. No lurch of the train, slip, or mishap is shown to have occurred. The only unusual thing which occurred was that the strain resulted in a rupture. It was held that the act in lifting the mail sack was intentional, and that only the result was accidental, and therefore there could be no recovery. This case is quite similar in its facts to *Young* v. *Railway Mail Assn., supra* [126 Mo. App. 325, 103 S. W. 557], decided by the St. Louis Court of Appeals, which reached exactly the opposite conclusion.

"*Appel* v. *Aetna Life Insurance Co.*, 86 App. Div. 83 (83 N. Y. Supp. 238), affirmed 180 N. Y. 514 (72 N. E. 1139) (1903): The insured died from appendi-

citis, caused by intentionally riding a bicycle. An operation to relieve him was performed, but he died three days later. The appendix was found to have been ruptured and to have been diseased. No showing was made of unusual shock, fall, or mishap, and it was in evidence that the use of the muscles could have caused the rupture. No recovery was allowed for the unexpected result of an intentional act.

"*Barnstead* v. *Commercial Travelers' Assn.,* 204 App. Div. 473 (198 N. Y. Supp. 416 (1923): Insured died after administration of nitrous oxide gas for tooth extraction. His previous condition was such that he was liable to sudden death. The gas was skillfully administered and at his request. Held, that death was not caused by accidental means, though death was not the usual result of the use of such gas. This is one of the few cited cases which is at all similar to the case at bar on the facts.

"*Casualty Co.* v. *Johnson,* 91 Ohio St. 155 (110 N. E. 475, L. R. A. 1916B, 1018 (1914): The insured suffered disability from dilation of the heart, due to a shock from a cold bath. Insured intended to do just what he did do. There was no slip or fall or mischance shown to have occurred. It was held that there could be no recovery for the unexpected result of an intentional act. * *

"*Shanberg* v. *Fidelity & Casualty Co.,* 158 Fed. 1 (85 C. C. A. 343, 19 L. R. A. (N. S.) 1206 (1907): This is a widely cited case. The insured had fatty degeneration of the heart and suffered a heart rupture from overexertion intentionally undertaken in helping carry a door weighing about 86 pounds. No slip, fall, or wrench was shown to have occurred. It was held that there could be no recovery on the ground that the heart rupture was the accidental result and not the accidental means through which death was effected.

"*Hastings* v. *Travelers' Insurance Co.* (C. C.), 190 Fed. 258 (1911): Insured died from dilation of the

heart, induced by a voluntary effort in raising and lowering himself by his arms from a sitting position in a Morris chair. This was done in an exhibition of his strength. Nothing unexpected or unusual happened during the physical exercise, except the result itself, and it was held that there could be no recovery."

A case similar in many respects is the case of *Iwanicki* v. *State Industrial Accident Commission,* 104 Or. 650 (205 Pac. 990, 29 A. L. R. 682), where the claimant was employed as an upholsterer and had the habit of putting into his mouth the nails used in that employment, seemingly according to the custom of such craftsmen. He pursued this occupation for seven weeks when there came on a case of lead poisoning contracted by absorbing the coating of the nails. We there held that the records showed that he had contracted an occupational disease and was not within the scope of the statute prescribing that the injury must be caused by accident. The present contention does not differ in principle from the Iwanicki case. The only distinction is that the onset of the disease in the present case was more rapid than in that case. A like principle governs *Kendall* v. *Travelers' Protective Association,* 87 Or. 179 (169 Pac. 751). In the Iwanicki case there was no point of time described in the record at which one could say the alleged accident occurred, and in the Kendall case one ground of decision was that, where the lesion of tissue from which the injury resulted was made under the direction or by consent of the claimant, there was no accident.

In *Lough* v. *State Industrial Accident Commission,* 104 Or. 313 (207 Pac. 354), this court sitting in banc, Mr. Justice McCourt alone not participating, treated at length by unanimous decision the question of par-

ticular date as an element of claim under the Workmen's Compensation Act and arrived at the conclusion that the words ''date upon which the injury occurred'' plainly indicated a certain point of time and not an extended period.

*Hood* v. *Maryland Casualty Co.*, 206 Mass. 223 (92 N. E. 329, 138 Am. St. Rep. 379, 30 L. R. A. (N. S.) 1192), was a case where the injury consisted in contraction of glanders from horses which the claimant was required to care for, and in cleaning their stalls, he being ignorant that they had glanders. Here, however, the claimant knew of the heat and smoke before he undertook the work of fighting the fire. Moreover, the Massachusetts case contains no restriction of date. The insurance was for ''injury suffered by assured while on duty in the factory, shop or yard specified in the schedule in and during the operation of the trade or business described in the schedule.'' We remember that Massachusetts is one of the states which contains no element of accident as the cause of the injury, but compensates for any injury however received, so that it is in the course of the employment.

In *United States Casualty Co.* v. *Griffis*, 186 Ind. 126 (114 N. E. 83, L. R. A. 1917F, 481), action is predicated upon the ignorance of the insured concerning the thing he did. There, by mistake, the insured ate nonedible mushrooms, not knowing them to be such but supposing them to be wholesome. The result was ptomaine poisoning, from which he died and, properly, it was held that it was an accident that caused his death. Here, however, the claimant knew beforehand that the fire was hot and attended by smoke and cinders which would naturally and inevitably irritate and inflame his eyes, yet he engaged in fighting it. There was no mistake on his part about what he was doing like there was when Griffis ate the

poison mushrooms, neither did anything happen about the fire different from any other like fire so far as the record discloses and hence there was no accident.

Another case cited which is supposed to sustain the contrary doctrine is *Sullivan* v. *Modern Brotherhood of America*, 167 Mich. 524 (133 N. W. 486, Ann. Cas. 1913A, 1116, 42 L. R. A. (N. S.) 140). In that case the insured was by hand washing underwear on a washboard. Unknown to her, the suds were infected with gonorrheal germs. Some of the suds splashed into her eye, which in turn was infected by the germs resulting in loss of its sight. In principle it was the same as if she had unwittingly introduced into her system any other poison. The element of accident lies in the fact that she did not know of the pollution of the water, but here the claimant knew beforehand all the elements entering into his fight against the fire.

Even in *Elsey* v. *Fidelity and Casualty Co.*, 187 Ind. 447 (120 N. E. 42, L. R. A. 1918F, 646), cited in opposition to the view that the present case is not one of accident, the court held the true test to be:

"that if in the act which precedes the injury, though an intentional act, something unusual, unforeseen and unexpected occurs, which produces the injury; it is accidental; but, if in the act which precedes the injury something usual, foreseen and expected occurs which produces the injury, it is not accidentally effected."

All happened in the fire in question just as usual and as to be foreseen and expected, viz.: the heat and smoke which the stipulation says "set up a condition of glaucoma in his left eye." In the act preceding the injury only the usual things of heat and smoke happened and hence according to this case there was no accident as a cause of the injury.

In *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah, 14 (206 Pac. 278, 23 A. L. R. 325,) cited in support of the theory that the claimant suffered an accident, there is an element of a certain date to which the accident might be referred and not to a period consisting of a number of days. In that instance, it is stated that the claimant was gassed on January 17, 1921.

Tennessee has a statute like our own in the respect here under consideration. In *Meade-Fiber Corporation* v. *Starnes,* 147 Tenn. 362 (247 S. W. 989), the business conducted by the employer required the use of a chemical called "soda ash" in pulverized form and contained in sacks. It was part of the employee's work to assist in moving these sacks from the basement to an upper floor in the building. Another chemical used in connection with the business was called "bleach," and the employee was obliged to transfer the drums containing this chemical from the car in which they were shipped to the bleaching-room. He was also obliged to assist in cleaning up that room. The work of removing these sacks of soda ash and cleaning up the room necessarily caused dust and, as the court put it, the question, therefore, was whether "the breathing of dust necessarily caused by the very work in which the employee is engaged constitutes an accidental injury." The court said:

"We cannot conceive that the breathing of dust caused to arise necessarily from the very work being performed, has in it any element of accident. The material being moved was in the form of dust. It was contained in sacks. The very nature of the material and its container, and the movement thereof, necessarily, and not accidentally, caused the dust to float in the air, and to be breathed by the workmen. There was no accident in the form of the material, its

container, or method of movement. The escape of dust in its movement did not result from any fortuitous circumstance; it was necessarily incident thereto. It seems to us that the same reasons which exclude occupational diseases must apply here, and exclude an injury which is produced by the necessities of the occasion, in the absence of any accident entering into the cause of or as producing the particular occasion."

Accident as the cause of injury under our statute must not be confounded with the injury itself which is the effect of the cause. Here the claimant designedly did everything which brought on the blindness. Without what he knowingly did it would not have happened. True enough he did not purposely extinguish the sight of his eye but he must have known that the heat, smoke and cinders would irritate and inflame the eye with the possibility that blindness would ensue. The natural and probable result of going into the heat and smoke of a forest fire for any considerable time is to produce inflammation and irritation. No one can escape it though the consequences may not be so severe upon some persons as upon others.

The case of the present claimant is faulty in both respects. The alleged "accident" is not shown to have happened on any particular date, but in that feature discloses the gradual advance of an occupational disease. On the other hand, the exposure to the heat and smoke of the fire was voluntarily incurred by the claimant. This does not constitute an accident because there is no showing that the fire was attended by some sudden element of harm not common to such fires and which directly and unexpectedly affected the claimant.

In all the cases cited by the claimant on this point under a statute like ours, reference is made to a certain definite happening constituting the accident and

occurring at a particular time and not during a long continued period of duration. For instance, in *American Accident Co.* v. *Reigart,* 94 Ky. 551 (23 S. W. 191, 42 Am. St. Rep. 347, 21 L. R. A. 651), the claimant was eating a piece of steak and, in swallowing it, a piece of it, instead of going down into the stomach as usually is the case, went into the windpipe and that caused the injury of the decedent. Again, in *McGlinchey* v. *Fidelity and Casualty Co.,* 80 Me. 251 (14 Atl. 13, 6 Am. St. Rep. 190), a horse driven by the decedent bolted and ran away and, though he was ultimately brought under control without collision or overturning the vehicle, the decedent was so excited and scared that he died within an hour. There, the bolting of the horse was the unusual, unexpected element causing the subsequent injury and was referable to a certain fixed period of time. In *Raina* v. *Standard Gas Light Co. of New York,* 193 App. Div. 54 (183 N. Y. Supp. 264), the claimant was wheeling ashes in a cellar when a fellow-workman, by mistake, opened a gas-flue from which gas escaped and was ignited, burning the claimant. It was the same element of unexpectedness in the mishap which caused the injury. In the case of *United States Paper Board Co.* v. *Lewis,* 65 Ind. App. 356 (117 N. E. 276), the unexpected occurrence was the breaking of a pipe, letting out a lot of hot pulp which the defendant had to flush into a sewer with hot water. He got overheated and caught cold resulting in pneumonia, and, besides that, it was an injury in the course of employment, for which our statute does not give compensation, unless it is caused by accident. *In re Archie A. Arbuckle,* 3 Ann. Rep. U. S. Employers' Compensation Commission, 127, accident is not mentioned in the act under which the claim is made. It looks to injuries sustained in the perform-

ance of duty and all such casualties are compensated irrespective of whether they are caused by accident or not. In *Bacon* v. *United States Mutual Acc. Association*, 44 Hun (N. Y.), 599, the accidental contact with putrid hides whereby a malignant pustule was caused was the immediate accident as a basis of the judgment for the claimant. And so in all the cases cited by the claimant here, one can read the record and put his finger on the precise mishap which brought about the injury and it is not a case of mere gradual approach of disease, resulting from the occupation in which the claimant was engaged. The whole spirit of the statute is to compensate those who are the subject of accident and are injured thereby. It does not refer to cases where the injury is the direct result of voluntary exposure to danger in which nothing different from the ordinary progress of such danger is disclosed.

The loss of an eye excites commiseration but to award compensation in this instance is to distort the statute, consign to the scrap heap all the doctrine of occupational diseases and directly to ignore our own decisions in similar cases.

The judgment of the Circuit Court ought to be reversed.